**Robbie J. BEX, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 53A01–1008–CR–422.

Court of Appeals of Indiana.

Aug. 22, 2011.

Transfer Denied Oct. 31, 2011.

---

Jeremy M. Noel, Bloomington, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Robbie J. Bex ("Bex") appeals from her conviction and sentence for operating while

intoxicated endangering a person,[1] as a Class A misdemeanor. Bex presents three issues for our review, which we restate as:

I. Whether Bex was denied her constitutional right to a trial by jury when five jurors decided her case;

II. Whether the trial court abused its discretion when it imposed a public defender user fee as a condition of her probation without making a determination of her ability to pay; and

III. Whether the public restitution work component of Bex's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On May 15, 2008, Bex was attempting to exit the parking lot after finishing her shift at General Electric in Bloomington. As she did so, she had a collision with another vehicle.[2] A sheriff's deputy responded to the scene and spoke to Bex. The deputy detected the odor of alcohol and noticed Bex's bloodshot, watery eyes and slurred speech. After administering field sobriety tests and a certified breath test, the deputy arrested Bex for driving while intoxicated.

The trial court held a jury trial in this case on May 28, 2010. A jury of six members was seated without an alternate juror being selected. During the trial, one juror suffered a medical emergency, and the case proceeded to a verdict with the five remaining jurors. Initially, defense counsel acknowledged the defense's agreement to continuing with only five jurors, but counsel later moved for a mistrial, which the trial court denied. The five-person jury found Bex guilty, and the trial court sentenced her to 360 days in jail with 350 days suspended to probation and eighty hours of public restitution work. Bex now appeals.

## I. Right to Jury Trial

Bex contends that her constitutional right to a trial by jury was violated when a jury of only five members determined her guilt. The Sixth Amendment of the federal constitution provides for the right to trial by jury for criminal defendants. The United States Supreme Court, in *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), held that the Sixth Amendment right to trial by jury for criminal defendants applied to the states through the Fourteenth Amendment. Article I, section 13 of the Indiana Constitution also secures a criminal defendant's right to trial by jury but, here, Bex challenges the alleged violation of her right only under the federal constitution.

As an initial matter, the State argues in its brief that Bex waived her right to a jury trial by failing to timely file her demand for trial by jury pursuant to Indiana Criminal Rule 22. There has been no showing that Bex had at least fifteen days advance notice of her scheduled trial date and of the consequences of her failure to demand a trial by jury, as required by Indiana Criminal Rule 22. Thus, the alleged untimeliness of Bex's motion for jury trial notwithstanding, we address her claim of a violation of her Sixth Amendment right.

During the State's presentation of its case-in-chief, juror number two suffered a medical emergency. After taking a recess,

---

1. *See* Ind.Code § 9–30–5–2(a).

2. The evidence is unclear as to whether the other vehicle backed into Bex's vehicle or Bex rearended the other vehicle.

the trial judge went back on the record and stated that previously the court, the State, and the defense counsel, in a sidebar conference, had agreed that no alternate juror would be picked and that if something happened to one of the jurors, the five remaining jurors would decide the case. The sidebar referred to by the trial judge was an unrecorded sidebar; however, defense counsel acknowledged on the record the accuracy of the trial court's statement of the agreed procedure. After the trial judge's statement, the court recessed for lunch. Upon reconvening, defense counsel moved for a mistrial based upon his uncertainty that his agreement to a five-member jury was valid. The trial court denied the motion, and the trial continued. The five remaining jurors deliberated and returned a guilty verdict to the charge of operating a vehicle while intoxicated in a manner endangering a person, a Class A misdemeanor.

In *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the defendant had filed a pretrial motion to impanel a twelve-person jury instead of the statutorily mandated six-man jury in all but capital cases. The defendant's motion was denied, he was convicted as charged, and was sentenced to life imprisonment. On appeal, the defendant claimed, in pertinent part, that his Sixth Amendment rights had been violated. The Supreme Court stated as follows when addressing the issue of whether the constitutional guarantee of a trial by jury necessarily requires a trial by exactly twelve persons, or some lesser number:

> We conclude, in short, as we began: the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics.' To read the Sixth Amendment as forever codifying a feature so incidental to

the real purpose of the Amendment is to ascribe a blind formalism to the Framers which would require considerably more evidence than we have been able to discover in the history and language of the Constitution or in the reasoning of our past decisions. We do not mean to intimate that legislatures can never have good reasons for concluding that the 12-man jury is preferable to the smaller jury, or that such conclusions—reflected in the provisions of most States and in our federal system—are in any sense unwise. Legislatures may well have their own views about the relative value of the larger and smaller juries, and may conclude that, wholly apart from the jury's primary function, it is desirable to spread the collective responsibility for the determination of guilt among the larger group.... Our holding does no more than leave these considerations to Congress and the States, unrestrained by an interpretation of the Sixth Amendment that would forever dictate the precise number than can constitute a jury.

399 U.S. at 102–03, 90 S.Ct. 1893 (internal citations and footnotes omitted). The Supreme Court held that the twelve-man panel is not a necessary ingredient of 'trial by jury,' and that the defendant's Sixth Amendment rights were not violated by the Florida statute calling for a six-member panel. *Id.* at 86, 90 S.Ct. 1893. The right to trial by jury was not violated by denying the defendant's request for a jury panel larger than provided for by statute.

It has long been held in this state that, under the Sixth Amendment, a defendant may waive the statutory right to a twelve-person jury and consent to a trial by an eleven-person jury. *See Smith v. State*, 176 Ind.App. 37, 39, 373 N.E.2d 1112, 1113 (1978) (although statute provided for jury of twelve members, such provision is pri-

marily for protection of defendant and thus defendant may waive requirement of twelve-member jury and consent to be tried by jury of eleven members). We now take up the question of whether, under the Sixth Amendment, a defendant may waive his or her statutory right to a six-person jury and agree to be tried by a jury of five members.

■ Bex asserts that a defendant may not waive his or her right to a six-member jury. In support of her argument that her constitutional right to a jury trial was violated in this case, Bex relies on *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978). In that case, the United States Supreme Court addressed the constitutionality of a Georgia statute providing for five-person juries in certain types of cases. The Court examined scholarly studies on jury size and raised several concerns about juries containing less than six members. Those concerns include: smaller juries are less likely to foster effective group deliberation; the risk of convicting an innocent person rises as the size of the jury diminishes; the verdicts of jury deliberation in criminal cases will vary as juries become smaller, to the detriment of the defense; the opportunity for meaningful and appropriate representation of a cross-section of the community decreases with the size of the panel; and there exist methodological problems that tend to mask differences in the operation of smaller and larger juries. *Id.* at 231–39, 98 S.Ct. 1029. Based upon its application of the factors identified in the studies, the Court determined that Ballew's criminal trial before a five-member jury deprived him of the right to trial by jury as guaranteed by the Sixth Amendment.

We disagree with Bex's claim that the rationale set forth in *Ballew* should be applied here because *Ballew* is distinguishable from the present case. In *Ballew,* the five-member jury was mandated by a state statute. In contrast, in the instant litigation Bex was provided with the statutory right to a six-person jury.[3] Her trial began with six jury members and, due to a medical emergency, one member was excused from service. A five-member panel was not legislatively imposed upon Bex, thereby affording her the opportunity to decline the service of a panel made up of less than six members. Moreover, in deciding proceed without an alternate, Bex knew the six jurors she was getting and elected to proceed in the event one could not serve; the defendant in *Ballew* did not know the jurors and made no such election. Thus, we see an important distinction between the situation in *Ballew,* where the law mandated a five-member jury, and the present situation, where the law provides for a six-member jury, but the defendant chooses to waive that right and accept less than the law provides.

We note that the Supreme Court of Florida has decided the exact issue in this case. In *Blair v. State,* 698 So.2d 1210 (1997), the court accepted jurisdiction of a certified question: do the Florida and United States Constitutions permit a defendant to waive his right to a six-member jury and agree to be tried by a five-member jury in a criminal case? The Florida court answered this question in the affirmative, and, in doing so, declined to follow the decision in *Ballew.* While acknowledging the strong case made in *Ballew* for a six-person jury minimum, the *Blair* court determined that the crucial distinction between its case and *Ballew* was a mid-trial

3. Indiana Code section 35–37–1–1(b) (1981) provides for six-members on a jury in cases involving a Class D felony or a misdemeanor.

waiver by the defendant as opposed to the imposition of a five-member jury by the State. At Blair's trial, six jurors and one alternate were selected. Later, the trial court excused one juror for neglect and seated the alternate as the sixth juror. After the State had presented most of its evidence, the court informed the jury that the trial would last longer than first anticipated. One of the jurors notified the court that he had a five-day out-of-state seminar to attend. The court held a sidebar conference, and the court and counsel agreed to finish the trial with the five remaining jurors. The court determined that it was not unconstitutional for a defendant to waive his right to a six-member jury and be tried by a jury of five. Other jurisdictions have also made this determination. *See Commonwealth v. Nicoll,* 452 Mass. 816, 897 N.E.2d 1226 (2008) (holding that defendant could waive his Sixth Amendment right to jury trial by jury of at least six persons and agree to trial by jury of five persons); *see also Schulman v. State,* 76 Tex.Crim. 229, 173 S.W. 1195 (1915) (holding that it is well-settled rule that defendant, under his right to waive trial by jury, has further right of agreeing to be tried before less than six jurors). *But see People ex rel. Hunter v. District Court In and For the Twentieth Judicial District,* 634 P.2d 44 (Colo.1981) (holding that defendants accused of non-capital felonies or class 1 misdemeanors may elect, pursuant to state statute, to be tried by jury of less than twelve but may not be tried by jury of less than six; specifically withholding determination with regard to misdemeanors other than class 1).

Moreover, six is not viewed as a magic number but merely the boundary at which courts across the country have drawn a line in defining the size of a jury that must be provided to a defendant in certain cases. *See Ballew,* 435 U.S. at 231–32, 98 S.Ct. 1029; *Blair,* 698 So.2d at 1216. We agree with the reasoning of the Florida Supreme Court that, based upon a defendant's right to waive the presence of an *entire* jury, it would be inconsistent to hold that a defendant could not waive the presence of *one* juror. *Blair,* 698 So.2d at 1217. Therefore, we conclude that there is no federal constitutional bar to a defendant's waiver of the presence and participation of one of the six jurors in a criminal trial.

Having determined that a defendant may waive the presence of a single juror from a jury panel of six, we next turn to the sufficiency of a defendant's waiver in such a situation. First, we note opinions on the sufficiency of a defendant's waiver of a single juror in cases involving a twelve-person jury.

In *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), the Supreme Court addressed the issue of whether a defendant could waive the right to a twelve-person jury and consent to a trial by an eleven-person jury. The Supreme Court concluded that a criminal defendant had the power to waive his or her right and submit to a jury of less than twelve persons. The Court also determined the sufficiency of Patton's waiver. In doing so, it cautioned that

> before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

*Id.* at 312–13, 50 S.Ct. 253. Thus, the Supreme Court's analysis presumed that the specific number of jurors was connected to the fundamental right to a trial by jury ensured to defendants by the Sixth Amendment and applicable to the states by the Fourteenth Amendment. Therefore, the discussion of the sufficiency of the defendant's waiver suggested a personal colloquy between the trial court and the defendant, much like that which is required when other fundamental rights are implicated, but are being waived.

In *Smith,* this court decided that a valid waiver of a twelve-member jury had been effected. 373 N.E.2d at 1113. The court stated that Smith, with his counsel, and the State agreed to an eleven-member jury after one of the jurors became ill. Providing no factual details, the Court concluded that "[t]he evidence further disclosed that the defendant in person consented and agreed to the eleven-member panel." *Id.* at 1112.

Subsequently in *Holliness v. State,* 467 N.E.2d 4 (Ind.1984), our Supreme Court determined that Holliness validly waived a twelve-member jury panel. During jury selection, the trial court asked the prosecutor and defense counsel if they would accept twelve jurors and forego the selection of an alternate juror. *Id.* at 6. The judge explained that if no alternate juror was selected, he would conclude the case with an eleven-member jury in the event one juror became ill. Both attorneys agreed and twelve jurors were chosen. At that time, both counsel approached the bench and stated that they accepted the twelve-member jury. Defendant was sitting at the defense table in the courtroom when this occurred. Later, when one of the jurors became ill, the court informed both counsel and defendant of the situation and then had the jury resume deliberations with eleven people.

On appeal, Holliness argued that there was no valid waiver to a twelve-member jury because the record did not show he personally consented to be tried by a jury of less than twelve. In concluding there was a valid waiver, our supreme court based its decision on the fact that the record showed that both parties, through counsel, expressly agreed to an eleven-member jury in the event that a juror would become ill; that Holliness made no objection either when the jury, with no alternates, was accepted by both parties or when the court notified the parties that a juror had become ill and the eleven-member jury would continue deliberations; and that the record disclosed that Holliness was relying on his counsel to make all the strategic decisions during the course of the trial, including any objections. *Id.* at 7.

■ Next, in *Judy v. State,* 470 N.E.2d 380 (Ind.Ct.App.1984), a panel of this court was presented with the issue whether consent to a trial by a jury of six people where the defendant was charged with a felony, could only be given by the defendant personally, or if it might be given by counsel on the defendant's behalf. We stated the following:

> Traditionally, when a defendant consents at the outset to accept counsel as his representative, law and tradition may allocate to counsel the power to make binding decisions of trial strategy in many areas. Thus, the decision or consent of counsel operates as the decision or consent of the accused generally in the area of trial procedure.
>
> On the other hand, where the fundamental rights of the accused are involved his personal consent may be necessary for any waiver. Such is the case with an accused's right to trial by jury. Contrary to Judy's argument it does not follow, however, that regulation of the number of persons constituting a

jury should be qualitatively equated with the right to have a jury. Indeed, we hold that it should not. The fundamental purposes in preserving the right to jury trial have been identified as protection of an accused from corrupt or overzealous prosecution and against the compliant, biased or eccentric judge. The fulfillment of those purposes does not depend upon whether a jury consists of six or twelve members. In *Williams v. Florida* the Supreme Court clearly expressed the view that neither theory nor experience supports the view that an accused will have any advantage with a twelve person jury.

Accordingly, we conclude that while under the statute in question the defendant's consent was necessary to try the case to a six member jury, the consent did not involve a fundamental right. Instead, it was merely a matter of trial procedure and as such was properly consented to by Judy's attorney.

470 N.E.2d at 381–82.

■ In sum, the case law reflects that under the Sixth Amendment, a defendant is entitled to a jury comprised of at least six members, as a five-member jury imposed on a defendant does not pass constitutional scrutiny. *Williams,* 399 U.S. at 91 n. 28, 90 S.Ct. 1893; *Ballew,* 435 U.S. at 239, 98 S.Ct. 1029. However, a defendant can consent to a trial by fewer jurors than assured him by statute, and that decision is one of trial procedure. As such, a defendant who consents to representation by counsel consents to his counsel's decisions on trial strategy. Unless, the defendant objects to his counsel's decisions, he is bound by those decisions. Thus, counsel's consent to or acceptance of a jury comprised of fewer members than provided for by statute, is a valid consent of the accused in the exercise of trial strategy. We find no error here.

## II. Public Defender User Fee

Bex claims that the trial court erred by imposing a public defender user fee of $150 without making a determination of Bex's ability to pay. When the trial court sentenced Bex, he imposed the public defender user fee, and Bex expressed to the trial court that she wished to have her cash bond applied to the obligations assessed by the trial court.

■ Sentencing decisions, including decisions to impose restitution, fines, costs, or fees, are generally left to the trial court's discretion. *Kimbrough v. State,* 911 N.E.2d 621, 636 (Ind.Ct.App.2009). As long as the trial court imposes fees within the statutory limits, there is no abuse of discretion. *Id.* "A defendant's indigency does not shield him from all costs or fees related to his conviction." *Banks v. State,* 847 N.E.2d 1050, 1051 (Ind.Ct.App.2006).

The record here is silent as to which statute the trial court relied on in imposing the public defender fee. Three statutes provide authority to the trial court to impose a fee on a defendant for the cost of his appointed counsel. *See* Ind.Code §§ 33–37–2–3, 33–40–3–6, and 35–33–7–6.

The fee could not have been imposed under Indiana Code section 35–33–7–6 because that statute caps the fee at $50 for a misdemeanor action, and the fee must be assessed prior to the completion of the initial hearing. Here, the fee was imposed at sentencing as a condition of probation. *Appellant's App.* at 7.

The imposition of the fee is also improper under Indiana Code section 33–40–3–6. That section allows the imposition of fees at any stage of a prosecution for a felony or a misdemeanor if the trial court makes a finding of the defendant's ability to pay. *Id.* A trial court abuses its discretion if a

fee is imposed under this statute without a determination of the ability to pay. *See Lamonte v. State,* 839 N.E.2d 172, 176 (Ind.Ct.App.2005) (abuse of discretion where trial court imposed fee without finding ability to pay). Here, it is undisputed that no such inquiry occurred.

The more difficult question is whether the fee was validly assessed under Indiana Code section 33–37–2–3, because there was no subsequent hearing during which Bex's indigent status was reviewed. The State argues that the trial court properly imposed the fee under Indiana Code section 33–37–2–3. Indiana Code section 33–37–2–3 provides in relevant part as follows:

(a) Except as provided in subsection (b), when the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent. If the person is not indigent, the court shall order the person to pay:

(1) the entire amount of the costs at the time sentence is pronounced;

(2) the entire amount of the costs at some later date; or

(3) specified parts of the costs at designated intervals.

(b) A court may impose costs and suspend payment of all or part of the costs until the convicted person has completed all or part of the sentence. If the court suspends payment of the costs, the court shall conduct a hearing at the time the costs are due to determine whether the convicted person is indigent. If the convicted person is not indigent, the court shall order the convicted person to pay the costs:

(1) at the time the costs are due; or

(2) in a manner set forth in subsection (a)(2) through (a)(3).

Bex initially was found to be indigent and counsel was assigned to represent her at trial. Based on the record of the sentenc-ing hearing, it is evident that the imposition of public defender user fee was a condition of Bex's probation.

In *Banks v. State,* 847 N.E.2d 1050 (Ind. Ct.App.2006), this court was asked to determine whether a trial court abused its discretion by imposing $200 in public defender fees without finding Banks had the ability to pay. The trial initially found that Banks was indigent and appointed a public defender to represent him. Thereafter, Banks pleaded guilty, and the matter proceeded to sentencing. The trial court imposed the public defender fee at sentencing without making a further inquiry as to Banks' ability to pay. We held that the trial court abused its discretion because Banks was still deemed indigent, and as such, no fees could be imposed under Indiana Code section 33–37–2–3(a). 847 N.E.2d at 1052. The opinion did not suggest that the public defender fee was imposed as a condition of probation.

In *Rich v. State,* 890 N.E.2d 44 (Ind.Ct. App.2008) and *Kimbrough v. State,* 911 N.E.2d 621 (Ind.Ct.App.2009), we were asked to decide if the trial court in each case had abused its discretion by ordering the respective defendants to reimburse the public defender fund without first holding a hearing to determine each defendant's ability to pay, after previously being deemed indigent. In *Rich,* we found no abuse of discretion because the reimbursement was a condition of probation, which would not begin until after the completion of the executed portion of the sentence. 890 N.E.2d at 48. A hearing to determine the defendant's current ability to pay would have been premature at sentencing. *Id.* Likewise, in *Kimbrough,* we found that the trial court did not abuse its discretion by ordering the defendant to reimburse the public defender fund because the fee was not due until after the defendant had completed the executed portion of his sen-

tence, and it was not yet necessary for the trial court to determine the defendant's current ability to pay. 911 N.E.2d at 638.

■ At Bex's sentencing hearing, after imposition of the fees, the trial court inquired of Bex if she wished for her cash bond, $500.00, to be applied to her obligation. *Tr.* at 235. However, Bex had been ordered to pay court costs, an alcohol countermeasures fee, an initial probation user's fee, and an alcohol and drug program fee, in addition to reimbursement for her court-appointed representation, totaling $914.50. At the time of sentencing, Bex had yet to serve four days executed. Thus, it appears that under *Rich* and *Kimbrough,* the trial court did not abuse its discretion by imposing the public defender fee as a condition of probation without first holding a hearing on Bex's ability to pay, as the fees were not due until after she had completed the executed portion of her sentence.

### III. Inappropriate Sentence

As part of her sentence, Bex was required to complete eighty hours of public restitution work. Bex challenges this portion of her sentence as inappropriate in light of the nature of the offense and the character of the offender.

■ As previously stated, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of that discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g,* 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deduction to be drawn therefrom." *Id.*

■ Once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating facts, it may then "impose any sentence that is ... authorized by statute; and ... permissible under the Constitution of the State of Indiana." Ind. Code § 35–38–1–7.1(d). If the sentence imposed is lawful, this court will not reverse unless the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The burden is on the defendant to persuade this court that his sentence is inappropriate. *Patterson v. State,* 909 N.E.2d 1058, 1063 (Ind.Ct.App.2009).

■ Although Bex frames her issue in terms of the inappropriateness of her sentence, the gist of her argument is that the trial court improperly weighed the aggravating and mitigating circumstances. A trial court no longer has any obligation to "weigh" aggravating and mitigating circumstances, thus we turn our review to the nature of the offense and character of the offender. *Anglemyer,* 868 N.E.2d at 491.

■ As for the nature of the offense, we note that the victim explained that there was major damage to both vehicles involved in the collision, including several thousand dollars of damage to the rear of the victim's car. *Tr.* at 97. The collision occurred as Bex was leaving in her car from the parking lot where she worked. Bex was so intoxicated at the time of the collision that she put the fender that had fallen off of her car in the wrong car and "laughed and giggled" when asked what she was doing. *Id.* at 95.

As for the character of the offender, Bex had a conviction for operating while intoxicated in 1999, and was arrested but not convicted of operating while intoxicated in 2001. We acknowledge that Bex supports a daughter, and lives with her ex-husband, who is on a fixed income. However, we conclude that Bex has not persuaded us

that the requirement that she complete eighty hours of public restitution work is inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

MATHIAS, J., concurs.

SULLIVAN, Sr. J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Senior Judge, concurring in part and dissenting in part.

I concur in the first portion of the majority's opinion as to Part I, Right to Jury Trial. I respectfully dissent, however, with regard to the majority's holding that the waiver by counsel, rather than by the defendant herself, was effective and binding upon the defendant.

Further, I respectfully disagree with the decision reached by a panel of this Court in *Judy v. State,* 470 N.E.2d 380 (Ind.Ct. App.1984). More particularly, I am unable to agree with the implication of that opinion, as adopted by the majority in the case before us, to the effect that consent not by the defendant but rather by counsel to a trial by a jury of fewer than six persons does "not involve a fundamental right [of the defendant]" and that it is "merely a matter of trial procedure." *Id.* at 382.

For guidance, I turn to the Florida Supreme Court. In performing its analysis in *Blair v. State,* 698 So.2d 1210 (Fla.1997), the court stated that a full-blown colloquy such as that used in accepting a guilty plea is not absolutely necessary; rather, a personal on-the-record waiver is sufficient. *Id.* at 1217. The court noted that the trial judge ensured that Blair was apprised of the alternate courses of action available to him and had enough time to make a "considered decision," and confirmed that this was the option that Blair wished to choose. *Id.* In addition, Blair unequivocally stated to the court that he wished to proceed with only five jury members. Based upon these facts, the Florida Supreme Court concluded that Blair's personal on-the-record waiver, after being apprised of alternative options and having consulted with counsel, constituted a valid waiver.

In the present case, the facts are much different. There was an unrecorded sidebar at which the trial judge, defense counsel, and the State apparently agreed to a six-member jury with no alternate and further agreed that if a juror became ill, the trial would continue with a five-member panel. *See* Tr. p. 76. Subsequently, when a medical emergency of one of the jurors reduced the jury panel to five members, the trial judge stated, in pertinent part:

> The first time in a long time that we've seated a jury without picking an alternate. For the record I had called counsel up to the bench, and I don't mean to make light of [Juror No. 2]'s circumstances by the way, but she's conscious now and appears to be relatively okay at this point. In event [sic] during voir dire at the end of challenges I'd asked counsel to come up for a sidebar and we agreed at that time that if something happened to one of the jurors that the five or however many remaining jurors would be the jury in the case. Is that correct [defense counsel]?

> DEFENSE COUNSEL: Unfortunately yes, but ..., yes, that was the agreement.

*Id.* at p. 125. It appears that Bex was present in the courtroom during the attorneys' sidebar with the trial judge, although not a party to it. *See id.* at p. 4. However, we cannot determine from the transcript whether she was present during the dialogue between the court and her counsel set forth above. The transcript reflects this colloquy following the recess for the medical emergency:

THE COURT: We will come to order. The record should reflect the presence of the defendant and the attorneys to the case.

DEFENSE COUNSEL: Your Honor.

THE COURT: The ladies and gentlemen of the jury....

DEFENSE COUNSEL: Your Honor the defendant had run to the restroom.

THE COURT: I beg your pardon, do you want to wait on her to get back?

DEFENSE COUNSEL: If we're just making a record of what happened, I don't think so.

*Id.* at p. 124. The record does not reflect when Bex returned to the courtroom or if she returned before the court's dialogue with her counsel and recess for lunch. *See id.* at pp. 124–26. Upon reconvening after the lunch recess, defense counsel moved for a mistrial based upon the disruption to the jury's concentration caused by the medical emergency as well as counsel's belief that his agreement to a five-member jury was invalid. The trial court denied counsel's motion.

Contrary to the facts in *Holliness v. State,* 467 N.E.2d 4 (Ind.1984), cited by the majority here, it appears that Bex was not privy to her counsel's stipulation of waiver of her right and not present in the courtroom in order to have the opportunity to object. In addition, based upon the warnings and data contained in *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), about reducing the jury number below six, I believe this to be a much more dangerous situation than that in *Holliness* where the jury panel was merely reduced from twelve to eleven.

Moreover, unlike the record in *Blair,* the materials on appeal here do not show that Bex was made aware of the alternative options; that she had ample opportunity, or any opportunity, to confer with her counsel; or that she had time to make a cautious and informed decision. The materials reveal neither communication between Bex and her counsel nor communication between Bex and the trial court with regard to Bex's waiver of her right. *See Wallace v. State,* 722 So.2d 913, 914 (Fla.Dist.Ct.App.1998) (reversing defendant's conviction and remanding for new trial because the record did not demonstrate whether defendant was aware of his constitutional right to a six-member jury or of his alternatives to proceeding with only five jurors, and he did not personally waive his right where trial court did not ask defendant directly whether he agreed with his counsel's stipulation but accepted defense counsel's statement that he had discussed the matter with his client and defendant was not opposed to having five jurors after one juror became ill). I am further mindful of the *Blair* court's cautionary words: "[W]hile declining to mandate any additional formal protocol beyond that we find sufficient here, we remind trial courts of the importance of securing a personal waiver and of conducting an 'appropriate oral colloquy' to be certain that any waiver is knowing, intelligent, and voluntary." 698 So.2d at 1218. I am of the view that the *Blair* court's caution for a personal and knowing, intelligent, and voluntary waiver is the desired method to protect a defendant's rights. In this regard, I would decline to apply the holding of *Holliness* other than to its narrow and specific facts.

Under these circumstances, I do not believe this waiver to be sufficient to relinquish Bex's right to a six-member jury. Therefore, I conclude that the claimed waiver contained in this case was not sufficient to show that Bex knowingly, intelligently, and voluntarily waived her right to a trial by a jury of six members. Based

upon the foregoing, I would reverse Bex's conviction and remand to the trial court.[4]

4.  Based upon my view that the conviction should be reversed and the matter remanded for further trial court proceedings, I see no need to address the sentencing issues discussed by the majority in Parts II and III of the opinion.