# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**IVAN A. ARNAEZ**
Arnaez Law Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROBEL**
Deputy Attorney General
Indianapolis, Indiana

FILED

Sep 28 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN DUNCAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1201-CR-22 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Allen R. Hamilton, Judge
Cause No. 82D05-1003-CM-01417

**September 28, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Following a bench trial, Steven Duncan was convicted of six counts of cruelty to an animal, all Class A misdemeanors. He raises three issues for our review: 1) Whether he knowingly waived his right to a jury trial; 2) Whether Indiana's animal cruelty statute is unconstitutionally vague; and 3) Whether there was sufficient evidence to overcome a defense of necessity.

Concluding that Duncan did not knowingly waive his right to a jury trial because the trial court did not fully advise him of his rights and obligations, that the statute is not vague as applied to him, and that there was sufficient evidence to overcome a defense of necessity, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

In March of 2010, Superintendent Monica Freeman of Evansville Animal Care and Control went to a property to investigate a complaint. At the property she found two horses in a paddock with no food or water. There were two barns on the property, and in each barn there were five horses in stalls that were filled with manure and urine and lacked any apparent food or water. Six more horses were in a pasture with access to hay and a ditch with water; one of those horses was a "mare with a halter grown into her face." Transcript at 291. As Superintendent Freeman was inspecting the property, Duncan arrived and admitted to owning and being responsible for the animals. When asked why the animals were in such poor condition, Duncan offered no explanation. A veterinarian called to the property found the horses to be living in deplorable conditions. All of the horses were removed and taken to the county fairgrounds, and Duncan was

arrested and charged with thirteen counts of animal cruelty under Indiana Code section 35-46-3-7(a).

At an initial hearing, Duncan appeared pro se, and in the advisement of rights the judge noted Duncan's right to a jury trial, but did not mention the requirement to timely request a jury trial if one was desired, or the consequences of failing to do so.[1] Duncan was represented by counsel by the time of a probable cause hearing, and well before a trial date was set. There is nothing in the record provided to suggest that Duncan was later informed of the requirements for requesting a jury trial or the consequences of failing to do so. There is also nothing in the record to indicate that he ever requested a jury trial, timely or otherwise.

Following a bench trial, Duncan was found guilty of six counts of neglecting a vertebrate animal.[2] The conditions of the horses for which he was convicted of neglect are as follows – as explained by veterinarians who examined them, and identified by the fairground stall number in which they were placed:[3]

Horse in stall six: A nineteen year old mare with rain scald over her back,[4] fecal matted hair, and swollen and inflamed legs. Based on her progression the rain scald would have been the result of weeks or a month in damp conditions. The swollen and

---

[1] Trial by jury in misdemeanor cases is controlled by Indiana Criminal Rule 22, see infra.

[2] The information charged Duncan with "cruelty to an animal" under Indiana Code section 35-46-3-7, which is entitled "abandonment or neglect of vertebrate animals."

[3] Many of the other horses on the property suffered from problems similar to those seen in these six horses, but the severity seems not to have risen to the same level, and Duncan was not convicted of neglect for those animals.

[4] Rain scald is a gram-positive actinomyces bacterial infection that usually infects horses on their backs, and is the result of the horse spending time in damp conditions. It is more common in the winter, and it is treatable if the animal is moved to drier shelter.

inflamed legs could have been caused by her matted and dirty state. Her body score was two, indicating malnourishment.[5]

Horse in stall eight: A twenty-five year old mare with a body score of two to three, suffering from rain scald. She had injuries that appeared to be caused by a halter that was too tight, resulting in rubbing or pressure necrosis and leaving her with open wounds under the halter.

Horse in stall thirty-one: A two year old colt with a body score of 1.5, suffering from abdominal pain.

Two horses in stall thirty-three: Two yearling fillies, both of whom had to be euthanized on a veterinarian's recommendation. Both suffered from epiphysitis, a bone growth plate inflammation that can be due to heredity, physical trauma, or poor nutrition. The epiphysitis resulted in pain and difficulty walking. Both suffered from rain scald. They both had body scores of one and were emaciated. At least one of them had metabolic bone disease, primarily caused by lack of nutrition. The bone disease made moving very painful, including moving the jaw while trying to eat.

Horse in stall thirty-six: A yearling who had severe rain scald with open wounds. He had pitting edema and a swollen head as a result of anemia. He had a body score of one, suffered from colic and resulting pain, and eventually had to be euthanized.

Additional facts will be supplied as necessary in the discussion.

## Discussion and Decision

### I. Waiver of Jury Trial in Misdemeanor Cases Under Rule 22

---

[5] The horses' body conditions were rated on a scale of one to ten, with one being emaciated and ten being fat. A normal horse would be scored at four to six.

## A. Standard of Review

The right of an accused to have a trial by jury is guaranteed by the Indiana and United States Constitutions. U.S. Const. amend. VI; Ind. Const. art 1, § 13; Belazi v. State, 525 N.E.2d 351, 351 (Ind. Ct. App. 1988), trans. denied. In criminal cases, the procedure for asserting the right is codified in Indiana Code section 35-37-1-2 ("The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. All other trials must be by jury."). While the Constitution does not differentiate between felonies and misdemeanors, in Indiana the procedure for asserting the right to a jury trial in misdemeanor cases is controlled by Indiana Criminal Rule 22. Rule 22 states, in relevant part:

> A defendant charged with a misdemeanor may demand trial by jury by filing a written demand therefor not later than ten (10) days before his first scheduled trial date. The failure of a defendant to demand a trial by jury as required by this rule shall constitute a waiver by him of trial by jury unless the defendant has not had at least fifteen (15) days advance notice of his scheduled trial date and of the consequences of his failure to demand a trial by jury.

While a defendant charged with a misdemeanor can therefore waive his right to a jury trial by inaction, the waiver must nonetheless be knowing, voluntary, and intelligent. Eldridge v. State, 627 N.E.2d 844, 846-47 (Ind. Ct. App. 1994), trans. denied; see also Brown v. State, 495 N.E.2d 178, 179 (Ind. 1986). On appeal, we consider the entire record to determine whether the defendant has made a voluntary, knowing, and intelligent waiver. Holtz v. State, 858 N.E.2d 1059, 1061 (Ind. Ct. App. 2006), trans. denied.

## B. Waiver of Jury Trial

The right to trial by jury is a fundamental right, and while the manner of preserving that right is altered by Criminal Rule 22, it is not diminished. Pryor v. State,

5

2012 WL 3727137 at *4, No. 49A02-1202-CR-101 (Ind. Ct. App., Aug. 29, 2012); Stevens v. State, 689 N.E.2d 487, 489 (Ind. Ct. App. 1997). There are three elements to a valid waiver of the right to a jury trial – knowing, voluntary, and intelligent. We have previously distinguished between these elements: "A voluntary waiver occurs if the conduct constituting the waiver is the product of a free will; a knowing waiver is the product of an informed will; an intelligent waiver is the product of a will that has the capacity to understand. . . ." Eldridge, 627 N.E.2d at 846. Additionally, the waiver needs to be personal. Id. In a misdemeanor case, the personal nature of the waiver can be inferred where the defendant fails to assert the right to a jury trial and there is evidence that the waiver is knowing, voluntary, and intelligent. Id. In the present case, Duncan contends that his waiver was not knowing because he was not fully informed. We agree.

The State concedes that Duncan was not advised of the consequences of failing to ask for a jury trial. We note that he was also not advised of the requirement of a written demand for a jury trial ten days before his scheduled trial date. The State contends however that we can infer that Duncan was informed because he was represented and thus "counsel presumably discussed a jury trial." Appellee's Br. at 12. Because the right to a jury trial is a fundamental right, we cannot assume from a silent record that Duncan was informed by his counsel. In order to establish a valid waiver in a misdemeanor case, the record is sufficient if

> 1) it does not contain a request for a trial by jury; 2) it evidences that the defendant was fully advised of the right to a trial by jury and of the consequences for failing to timely request the right; and 3) it reflects that the defendant was able to understand the advice.

6

Eldridge, 627 N.E.2d at 848.  A defendant may be advised of his rights in multiple ways. The court can orally inform him of his rights, Poore v. State, 681 N.E.2d 204, 208 (Ind. 1997) (noting also that "[w]hile it is advantageous for a trial judge to engage a defendant in colloquy concerning the consequences of waiving trial by jury," it is not required); the defendant can be given a written advisement, id.; Jackson v. State, 644 N.E.2d 595 (Ind. Ct. App. 1994); his counsel, on the record, can inform him of his rights and question his understanding of them, Reynolds v. State, 703 N.E.2d 701 (Ind. Ct. App. 1999); or the defendant can sign a written waiver and file it in open court, Poore, 681 N.E.2d 204.

Here, the record lacks any indication that Duncan was fully advised of the consequences of failing to timely request a jury trial.  Our case law further confirms that even where a defendant is represented, having counsel is not itself a sufficient substitute for the defendant being expressly advised of his rights.  Bex v. State, 952 N.E.2d 347, 349 (Ind. Ct. App. 2001) (noting as an initial matter that a represented defendant was not fully informed), trans. denied; Hanna-Womack v. State, 623 N.E.2d 439, 440 (Ind. Ct. App. 1993) (noting that the defendant was not fully informed by the court and that there was also no indication that she was informed by her counsel); see also Belazi, 525 N.E.2d at 352 ("We do not believe that representation by counsel is essential in order for a defendant to waive the right to a jury trial under C.R. 22.").  This assessment is further cemented by the fact that many cases concluding that a defendant was not well informed fail to mention whether the defendant was represented.  If the fact of representation led directly to the conclusion that a defendant was informed and thus that a waiver was knowing, we would have given more care to that point in past opinions.

The State also argues that we should not reverse because Duncan was not prejudiced. The relevant inquiry however is whether he was adequately informed as required by Criminal Rule 22. Levels v. State, 972 N.E.2d 972, 972 (Ind. Ct. App. 2012); Hadley v. State, 636 N.E.2d 173, 174 (Ind. Ct. App. 1994), trans. denied; Vukadinovich v. State, 529 N.E.2d 837, 839 (Ind. Ct. App. 1988). Furthermore, we have previously held that a violation of the right to trial by jury is a fundamental error, and cannot be considered harmless. Eldridge, 627 N.E.2d at 849; see also Bonner v. State, 650 N.E.2d 1139, 1141 (Ind. 1995) (defining "harmless" as error that does not prejudice the defendant's substantial rights).

The State further contends that Duncan consented to his counsel's trial strategy to proceed with a bench trial and cannot now object. If there had been a valid waiver by Duncan in the first place, we might be inclined to agree.[6] For this proposition the State cites Bex, and that case is distinguishable from the present case. In Bex, the matter in question related to a trial strategy to accept fewer jury members than were required by statute; it was not about waiver of the right to a jury trial. Bex, 952 N.E.2d at 350. If Duncan had validly waived his right to a jury trial here, then he would have been bound by that waiver unless the trial court chose, within its discretion, to allow withdrawal of the waiver. Hutchins v. State, 493 N.E.2d 444, 445-46 (Ind. 1986).

Finally, the State correctly argues that there is no indication that Duncan ever wanted, requested, or was denied a jury trial. But, we have previously noted that it does

---

[6] We note that the decision of whether to waive a jury trial will often be more than mere trial strategy. It is a fundamental right, and is one of the areas where our Rules of Professional Conduct dictate that the client's wishes shall control. Ind. Professional Conduct Rule 1.2. On the other hand, we have previously allowed a presumption that waiver of a jury trial was a strategic move in a misdemeanor case, without evidence to the contrary, and once the defendant had been informed of his rights under Criminal Rule 22. Stevens, 689 N.E.2d at 490.

not matter whether the defendant requested a jury trial. Casselman v. State, 472 N.E.2d 1310, 1311 n.1 (Ind. Ct. App. 1985) ("The state urges that since Casselman failed to demand a jury as provided by the rule, no error was committed. The argument is specious."). We agree with the State that because Duncan went along with a bench trial and never requested a jury trial, it is possible that he is only raising the issue now because he simply wants a new trial. Even so, we are obliged to find that he did not waive his right to a jury trial. He was not able to meet the "knowing" requirement of a valid waiver because he was not adequately informed of his rights and obligations as set out in Criminal Rule 22. See Levels, 972 N.E.2d 972; Vukadinovich, 529 N.E.2d 837.

While our conclusion in this issue alone requires us to remand the case for jury trial, because the other two issues that Duncan raises on appeal may impact that new trial or be brought up again during the trial, we must decide them here.

## II. Constitutionality of the Statute

### A. Standard of Review

When the validity of a statute is challenged our starting point is a presumption of constitutionality, and the challenger has the burden of overcoming this presumption. Price v. State, 911 N.E.2d 716, 719 (Ind. Ct. App. 2009), trans. denied. We resolve all reasonable doubts in favor of the statute's constitutionality, and the statute will only be found to be unconstitutionally vague if a person of ordinary intelligence would not be able to determine the generally prohibited conduct. Id. The statute need not meticulously list each item of prohibited conduct. Id. For vagueness challenges which do not involve First Amendment freedoms, we examine the challenge in light of the facts of that

9

particular case. Id. The challenger may not present hypothetical situations in order to demonstrate potential vagueness. Id. at 720.

## B. Vagueness

Duncan argues that Indiana's animal neglect statute is unconstitutionally vague. See Ind. Code § 35-46-3-7. We disagree. Under the circumstances here, a person of ordinary intelligence would know that this behavior was prohibited under the statute. The horses under Duncan's care were in terrible shape – they were malnourished, suffering from infections and diseases, and several of them had to be euthanized. "Neglect" under the statute in question is defined in part as "endangering an animal's health by failing to provide or arrange to provide the animal with food or drink, if the animal is dependent on the person for the provision of food or drink. . . ." Ind. Code § 35-46-3-0.5(4)(A). The majority of horses found on Duncan's property did not have food or drink available to them when animal control investigated the property. And it is clear that their health was endangered as a result because all of the horses underlying Duncan's convictions were found to be underweight, with most of them suffering from multiple health problems. Several were in such poor condition and suffering from such severe nutrition-related ailments that they had to be euthanized. The statute is not unconstitutionally vague as applied to Duncan, and contrary to his contention, it is "sufficiently definitive to 'indicate where the line is to be drawn between trivial and substantial things so that erratic arrests and convictions. . . will not occur.'" Tooley v. State, 911 N.E.2d 721, 724 (Ind. Ct. App. 2009) (quoting Brown v. State, 868 N.E.2d 464, 467 (Ind. 2007)), trans. denied.

10

III. Necessity Defense

A. Standard of Review

The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or assess the credibility of the witnesses. West v. State, 755 N.E.2d 173, 185 (Ind. 2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable trier-of-fact could have found the defendant guilty beyond a reasonable doubt. Id.

B. Necessity Defense and Sufficiency of the Evidence

We believe the State presented sufficient probative evidence from which a reasonable trier-of-fact could have found Duncan guilty beyond a reasonable doubt. Duncan's evidence of necessity as supplied in his brief relates only to the housing of horses in manure-filled stables without food or water, a situation that Duncan claims was temporary and spurred by necessity. He claims that a gate had been damaged the day before, allowing horses that should have been separated to co-mingle, and he had put the horses into the dirty stalls temporarily until he could fix the gate. We agree with the State that this is unrelated to the neglect for which Duncan was convicted, because "his convictions were based on long-term neglect, not short-term housing related to the alleged necessity." Appellee's Brief at 11. We also note that this court has in the past considered similar cases of neglect and has held evidence of inappropriately skinny and malnourished horses to have been sufficient to support a conviction under the statute. See Miller v. State, 952 N.E.2d 292 (Ind. Ct. App. 2011), trans. denied; Baxter v. State,

891 N.E.2d 110 (Ind. Ct. App. 2008); <u>Lykins v. State</u>, 726 N.E.2d 1265 (Ind. Ct. App. 2000).

<u>Conclusion</u>

Concluding that the statute is not vague as applied to Duncan and that there was sufficient evidence to overcome a defense of necessity, but that the trial court erred by insufficiently advising Duncan of his right to a jury trial, we affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and BRADFORD, J., concur.