

FILED

Apr 19 2017, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wendy Burnett,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 19, 2017<br><br>Court of Appeals Case No.<br>49A02-1610-CR-2402<br><br>Appeal from the Marion Superior Court<br><br>The Honorable John Razumich,<br>Judge Pro Tempore<br><br>Trial Court Cause No.<br>49G12-1508-CM-29371 |

**Baker, Judge.**

[1] Wendy Burnett appeals her conviction of Operating a Vehicle While Intoxicated Endangering a Person,[1] a Class A Misdemeanor. She argues that there was insufficient evidence to support her conviction for operating a vehicle while intoxicated endangering a person, that the trial court erred when it did not conduct an indigency hearing before imposing probation fees, and that her probation fees were improperly imposed by the probation department. We agree on all arguments, but as to her conviction, we find sufficient evidence supporting the lesser-included offense of Class C misdemeanor operating a vehicle while intoxicated.[2] We reverse and remand for further proceedings and with instructions to vacate Burnett's Class A misdemeanor conviction and to enter judgment for Class C misdemeanor operating a vehicle while intoxicated. As for the fees owed by Burnett, the judgment of the trial court is vacated and remanded for further proceedings.

## Facts

[2] On August 18, 2015, Burnett was riding in the passenger seat of a Chevrolet Impala in Indianapolis when the driver of the vehicle struck another vehicle. Burnett had fallen asleep before the collision, but she woke up upon the impact and jumped out of the vehicle. As a woman who lived nearby started yelling about the accident, Burnett got back into the vehicle's passenger seat, and the

---

[1] Ind. Code § 9-30-5-2(b).

[2] I.C. § 9-30-5-2(a).

driver drove away from the scene. The driver stopped the vehicle not far from the scene of the accident, and at some point, Burnett got into the driver's seat and drove back past the scene; by then, police were there beginning an investigation.

[3] Officer Matthew Fortney of the Indianapolis Metropolitan Police Department conducted a traffic stop on the Impala, which at the time was being driven by Burnett. Officer Fortney observed that Burnett's breath smelled of alcohol, that her eyes were glassy, and that her speech was slow. Burnett told Officer Fortney that she had not been driving the vehicle at the time of the accident.

[4] Officer Vincent Marshall conducted an investigation to determine whether Burnett was driving under the influence. He could hear her slur her speech, and when he asked whether she had been drinking or consuming alcohol, she stated that she had consumed approximately three beers before the officers arrived. Officer Marshall had Burnett complete the standard field sobriety tests, during which he observed that her eyes were red and watery and that her breath smelled of alcohol. The officer asked Burnett to take a portable breath test, which she declined to do. He then read the Indiana Implied Consent law, and Burnett refused to take a certified chemical test. Officer Marshall formed an opinion that Burnett was intoxicated based on her performance on the field sobriety tests and his observations, and he arrested her.

[5] The State charged Burnett with one count of Class A misdemeanor operating a vehicle while intoxicated endangering a person, and two counts of Class B

misdemeanor leaving the scene of an accident. On September 14, 2016, a bench trial took place. During the trial, the trial court admitted evidence of two phone calls that Burnett had made from jail to her son. In one of the phone calls, Burnett said that she had been in the car and dozed off and woke up to an accident, and that her reaction was to get in the car and drive away. The trial court found Burnett guilty of operating a vehicle while intoxicated endangering a person but not of leaving the scene of an accident.

[6]     After a sentencing hearing that began on September 14, 2016, and concluded on September 26, 2016, the trial court sentenced Burnett to 365 days, with five days executed and the remainder suspended to probation. Burnett was ordered to attend the Advocates Against Impaired Driving (AAID) destructive decision panel and to submit to an alcohol evaluation test and follow recommendations for treatment. The trial court ordered Burnett to pay a $200 countermeasure fee, a $250 alcohol drug services fee, $183.50 in court costs, and a $16.50 fine. The trial court stated that the court costs and fine "are in addition to your various probation fees that are required." Tr. p. 76. The trial court also stated that Burnett's probation would become non-reporting after she finished the terms and conditions of her probation, and that

> Part of those terms are repaying those things as soon as you are able to. So, I do encourage you to get those done sooner rather than later. My experience with probation has been the faster that they get paid, the faster they are likely to not pay attention to you so much, especially if you're not causing problems for them otherwise.

*Id.*

Defense counsel asked the trial court for a determination on whether Burnett was indigent for purposes of appeal, stating that Burnett makes under $20,000 per year. When Burnett said that she would be interested in pursuing an appeal, the trial court stated that defense counsel "summarized your financial situation. Is that correct? Is that your income?" *Id.* at 78. Burnett replied affirmatively. The trial court then found Burnett indigent as to the purposes of appeal and appointed a public defender to represent her on appeal. *Id.*

The sentencing order for Burnett includes a section on the conditions of her probation, which includes the comment "all standard conditions and fees of probation." Appellant's App. Vol. II p. 13. The order's monetary obligations section states that Burnett owes $649.50 in court costs and fees. This section does not include any probation fees. The probation order for Burnett lists fourteen standard conditions, including "pay all Court-ordered fines, costs, fees and restitution as directed." *Id.* at 47. The special conditions section of the probation order includes the same conditions as in the sentencing order. The probation order includes a space for monetary conditions of probation. That section of Burnett's order reads as follows:

| Monetary Obligation | Misdemeanor Rate | Felony Rate | Ordered Amount |
|---|---|---|---|
| Administrative Fee | 50 | 100 | |
| Alcohol/Drug Services Program | 250 (A Misd) 150 (B & C) | 250 | |
| Child Abuse Fee | 100 | 100 | |

| | | | |
|---|---|---|---|
| Countermeasure Fee | 200 | 200 | ■ |
| Court Costs | 183/183.50 | 183/183.50 | ■ |
| Domestic Violence Fee | 50 | 50 | ■ |
| Drug Interdiction Fee | 200-1,000 | 200-1,000 | ■ |
| Fine | 0-5,000 | 0-10,000 | $ |
| Pre-Trial Fee | 50 | 100 | ■ |
| Probation User Fee | 50 + 20/month | 100 + 30/month | ■ |
| Public Defender Fee | 50 | 100 | ■ |
| Safe School Fee | 200-1,000 | 200-1,000 | |
| Sexual Assault Victim Fee | 250-1,000 | 250-1,000 | |

*Id.* (blacked-out sections and blank spaces original). Subsequently, the probation department charged Burnett an adult probation administrative fee of $50, an adult probation monthly and initial user fee of $281.30, a probation user fee of $8.70, and a highway work zone fee of $.50, for a total of $340.50. Burnett now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[9] Burnett argues that the evidence is insufficient to support her conviction. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a

reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

[10] To convict Burnett of operating a vehicle while intoxicated endangering a person, the State was required to prove beyond a reasonable doubt that she operated a vehicle while intoxicated in a manner that endangered a person. Ind. Code § 9-30-5-2(b). This statute "requires more than intoxication to prove endangerment." *Dorsett v. State*, 921 N.E.2d 529, 532 (Ind. Ct. App. 2010). The element of endangerment can be established by evidence showing that the defendant's condition or operating manner could have endangered any person, including the public, the police, or the defendant. *Id.*

[11] At the end of the trial, the trial court stated:

> Certainly while individuals who have been through the system can rapidly come up with stories, I think that taken in conjunction with other things, I'm not entirely sure that Ms. Burnett was on the ball enough to make up the story that someone else was driving the vehicle under the stressors and the intoxication. . . .

> With regards to Count I, the operating while intoxication, [sic] we have very clear evidence that even if Wendy Burnett was not the one driving the vehicle at the time of the collision, we have extremely clear evidence that she got back behind the wheel of the vehicle at a later point in time while she was still under the effects of the alcohol that she had consumed earlier.

[12] Tr. p. 57. During sentencing, the trial court stated that Burnett "did provide [her] vehicle to somebody who crashed it into two other cars." *Id.* at 75. In

other words, after hearing from a witness and listening to an audio recording of a phone call Burnett had made to her son from jail in which she described what had taken place, the trial court found that Burnett was not driving at the time of the accident. There is no evidence in the record that Burnett drove in a manner that endangered a person when she started driving after the accident. Therefore, we find insufficient evidence supporting the Class A misdemeanor operating a vehicle while intoxicated endangering a person conviction.

[13] When a conviction is reversed because of insufficient evidence, we may remand to the trial court with instructions to enter a judgment of conviction on a lesser-included offense if the evidence is sufficient to support the lesser offense. *Chatham v. State*, 845 N.E.2d 203, 208 (Ind. Ct. App. 2006). Operating a vehicle while intoxicated is an inherently lesser-included offense of operating a vehicle while intoxicated endangering a person. We find that Burnett's presentation—slow and slurred speech, glassy eyes, and breath smelling of alcohol—and the officers' conclusions at the scene are sufficient to show that she was intoxicated. Accordingly, we reverse Burnett's operating a vehicle while intoxicated endangering a person conviction and remand with instructions to enter judgment for operating a vehicle while intoxicated as a Class C misdemeanor and to resentence accordingly.

## II. Probation Fees

[14] When a defendant is convicted of a misdemeanor, the trial court has discretion to impose certain probation fees. Ind. Code § 35-38-2-1(e). If the probation

department later wants to alter the fees imposed by the trial court, it must petition the trial court to increase the probation fees. I.C. § 35-38-2-1.7(b). To be entitled to an increase in fees, the probation department must demonstrate that there was a change in the financial ability of the probationer while on probation. *Id.*

[15] This Court has recently considered this same issue regarding probation fees and costs. In *Coleman v. State*, 61 N.E.3d 390 (Ind. Ct. App. 2016), the trial court's sentencing order did not list any court costs or fees, and the probation order's monetary obligation section included ordered amount sections that were blacked out with the exception of "fine," "safe school fee," and "sexual assault victim fee," which were all blank. 61 N.E.3d at 393-94. The probation department subsequently imposed an aggregate amount of $640 in fees on the defendant. This Court found that, "based on the record, we cannot conclude that the trial court imposed these probation fees." *Id.* at 394. Therefore, we vacated the fees and remanded for further proceedings.

[16] The State contends that "[t]here is no reason whatsoever to believe that *probation* would arrive at a non-statutory scheme for fees in contrast with the trial court's determination." Appellee's Br. p. 18 (emphasis added). This argument misses the essence of our state's statute—it is the trial court, not the probation department, that has the discretion to impose probation fees. That the amount of the probation fees imposed on Burnett falls within the statutory scheme does not mean that the fees were imposed according to statute. Here, the trial court stated that Burnett had "various probation fees that are required."

Tr. p. 76. The trial court's sentencing order and order of probation stated that Burnett had to follow "all standard conditions and fees of probation" and that her probation would become non-reporting upon "payment of all fees." Appellant's App. Vol. II p. 13-14, 47. Because the trial court did not impose any probation fees or costs on Burnett, it was erroneous to accept the imposition of these fees without a petition from the probation department and a showing that Burnett's financial situation has changed since the sentencing hearing. Accordingly, we vacate the fees and remand for further proceedings.

[17] Lastly, Burnett argues that the trial court erred by failing to conduct an indigency hearing before imposing fees. Indiana Code section 33-37-2-3 requires a trial court to hold an indigency hearing if the court imposes costs on a defendant. A trial court "has a duty to conduct an indigency hearing at some point in time." *Johnson v. State*, 27 N.E.3d 793, 795 (Ind. Ct. App. 2015) (citing Ind. Code § 33-37-2-3). An indigency hearing for probation fees should take place no later than when a defendant completes her sentence. *Id.*

[18] The trial court asked one question to determine Burnett's financial situation. After her counsel stated that she makes less than $20,000, the trial court stated that defense counsel "summarized your financial situation. Is that correct? Is that your income?" Tr. p. 78. Burnett replied affirmatively. The trial court did not inquire further into just how much less than $20,000 Burnett makes. While in some cases such a brief inquiry into a defendant's financial situation may be sufficient—if, for example, the defendant reports a six-figure income or significant assets or has in some other way established herself as financially

secure—in Burnett's case, it was not. The State contends that the trial court did conduct an indigency hearing based in part on its one question and on the fact that the record showed that Burnett was employed as a nurse and wore her nurse's uniform to trial. Standing alone, such facts are deficient in assessing a person's ability to pay. In this case, a sufficient indigency hearing would consist of the trial court asking Burnett questions in order to assess her actual ability to pay. Such questions might include asking about her exact yearly income, her assets or debts, or any financial expenses that could have an impact on her ability to pay fees, such as the cost of her rent, utilities, or transportation to and from work, medical expenses, or any dependents.

[19]     Nonetheless, the trial court assumed Burnett's ability to pay. The trial court stated that by making Burnett's probation non-reporting, "that gives you the opportunity to save a little bit on your probation fees and to kind of just have it hanging over your head, as opposed to something where you're reporting on a regular basis." *Id.* at 74. The trial court also stated that

> once all of your terms are completed, your probation will become non-reporting. Part of those terms are repaying those things as soon as you are able to. So, I do encourage you to get those done sooner rather than later. My experience with probation has been the faster that they get paid, the faster they are likely to not pay attention to you so much, especially if you're not causing problems for them otherwise.

*Id.* at 76. As a result of the trial court's assumption that Burnett could pay her probation fees, let alone its assumption that she could pay them "sooner rather

than later," Burnett could be unfairly prevented from receiving the benefit of non-reporting probation. Any disparate treatment based on a defendant's financial situation—whether it be by conferring a benefit, modifying a sentence, or something else—triggers the requirement to have an indigency hearing at the time the fees are imposed to determine the defendant's ability to pay.

[20] The judgment of the trial court is reversed with respect to Burnett's conviction and remanded with instructions to vacate her conviction of Class A misdemeanor, to enter judgment for Class C misdemeanor operating a vehicle while intoxicated, and to resentence Burnett accordingly. The judgment of the trial court regarding the fees owed by Burnett is vacated and remanded for further proceedings consistent with this opinion.

Barnes, J., and Crone, J., concur.