## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2017, 5:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rory Gallagher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lamarcus Williams, | November 22, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1706-CR-1199 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable David Certo, Judge |
| *Appellee-Plaintiff.* | The Honorable David Hooper, Magistrate |
| | Trial Court Cause No. 49G12-1601-CM-1518 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Lamarcus Williams (Williams), appeals the trial court's order requiring him to pay certain costs and probation fees.

We remand with instructions.

# ISSUE

Williams presents one issue on appeal, which we restate as: Whether the trial court conducted an adequate indigency hearing to determine Williams' ability to pay certain costs and probation fees.

# FACTS AND PROCEDURAL HISTORY

On December 4, 2015, Williams, along with his mother and brother, travelled to Mississippi to attend a funeral. In order to travel to Mississippi, Williams' mother rented a vehicle from Avis Car Rental (Avis) at the Indianapolis Airport. Williams brought his handgun with him for protection and when the car was returned to Avis, he left it loaded underneath the driver's seat. Avis later discovered the handgun and handed it over to the Indianapolis Metropolitan Police Department. When Williams was contacted by the police, Williams admitted that the handgun belonged to him and that he did not possess a permit.

On January 15, 2016, the State filed an Information, charging Williams with one Count of carrying a handgun without a license, a Class A misdemeanor. A jury trial was conducted on May 11, 2017, and the jury found Williams guilty

as charged.  On the same day, the trial court conducted Williams' sentencing hearing.  During closing arguments, the State recommended no jail time, sixty hours of community service, and for Williams' probation to terminate upon payment of all fees.  The State additionally sought for the destruction of Williams' handgun.  William's counsel, in turn, argued:

> Judge, I'll just summarize.  You know, the facts of this case, you know, this wasn't an incident where he showed up at a, you know, ex-girlfriend's house with a gun or anything like that.  I would also like to point out that he does have a job.  He is supporting his children who live with him.  He lives with his [fiancée], who is in the courtroom right now and who has been in the courtroom throughout today.

> Again, he has no criminal history.  So, honestly, I was going to recommend very close to what the State recommended.  I was actually going to recommend 45 hours of community service, probation, and probation to terminate upon completion of—or probation to terminate upon completion of the community service and the paying of all fines and fees.

(Sentencing Tr. p. 105).  After the parties' submissions, the following exchange occurred between the trial court, Williams' counsel, and Williams:

> [TRIAL COURT]: How much does he make at his job?

> [WILLIAMS' COUNSEL]: He makes $14 an hour, Judge, and he works from 11:00 to 7:00.

> [TRIAL COURT]: 40 hours a week?

[WILLIAMS]: Yes, sir.

[TRIAL COURT]: How many kids does he have?

[WILLIAMS]: Now? Five.

[TRIAL COURT]: Five kids.  And, gun destruction?  Your response?

[WILLIAMS' COUNSEL]: Yes. We're fine with that.

[TRIAL COURT]: Fine with the gun destruction?

[WILLIAMS' COUNSEL]: Yes.

(Sentencing Tr. p. 105).

[6] The trial court then sentenced Williams to an executed sentence of two days and 363 days suspended to probation.  Williams was ordered to complete forty-five hours of community service as well.  The trial court additionally stated, because Williams is employed, "he will pay probation costs."  (Sentencing Tr. p. 106).  Finally, the trial court stated that Williams' probation would terminate "upon completion of all terms," and "payment of all fees."  (Sentencing Tr. p. 106).  The trial court issued a written order on the same day.  The order

included a section titled "Monetary Obligations," which listed Williams' costs and probation fees[1] as follows:

| Part V | MONETARY OBLIGATION |
|---|---|
| **Court Costs and Fees** | |

| | |
|---|---|
| Adult Probation Administrative Fee -CR | $50.00 |
| Adult Probation Monthly and Initial User Fees - CR | $281.30 |
| Automated Record Keeping Fee - CR | $19.00 |
| Court Administration Fee - CR | $5.00 |
| Court Costs - City and Town - CR | $3.60 |
| Court Costs- County - CR | $32.40 |
| Court Costs - State – CR | $84.00 |
| DNA Sample Processing Fee - CR | $2.00 |
| Document Storage Fee - CR | $5.00 |
| Indianapolis International Airport Authority | $4.00 |
| Judicial Insurance Adjustment Fee - CR | $1.00 |
| Judicial Salary Fee - CR | $20.00 |
| Jury Fee - CR | $2.00 |
| Probation User Fee - Clerk's 3% - CR | $8.70 |
| Public Defense Administration Fee - CR | $5.00 |
| Safe Schools Fee - CR | $200.00 |
| | Total: $723.00 |

(Appellant's App. Vol. II, p. 13).

---

[1] In imposing the costs and fees, the trial court specified the authorizing statute in this case being Indiana Code Section 33-37-4-1 (governing the collection of court costs fees) and I.C. § 33-37-5-19 (governing the collection of other additional fees).

Williams now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Williams contends that the trial court failed to conduct a hearing to determine whether he was indigent prior to the imposition of costs and other probation fees. Williams, therefore, wants us to vacate the mandated costs and fees. In response, the State argues that vacating the costs and fees is not an appropriate remedy; rather, we should remand to the trial court if we determine that the trial court did not conduct an adequate indigency hearing.

Sentencing decisions, which include the imposition of fees, costs, and fines, are generally left to the trial court's discretion. *Bex v. State*, 952 N.E.2d 347, 354 (Ind. Ct. App. 2011), *trans. denied*. A trial court's sentencing decisions are reviewed under an abuse of discretion standard. *McElroy v. State*, 865 N.E.2d 584, 588 (Ind. 2007). "An abuse of discretion has occurred when the sentencing decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id*. at 588 (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)).

In the instant case, Williams was ordered to pay certain court costs, fines, and probation fees. Indiana Code Section 33-37-4-1 sets forth the costs the court shall collect from convicted defendants by operation of law. In addition, where, as here, a person is convicted of a misdemeanor, the trial court has discretion to impose probation fees. I.C. § 35-38-2-1(b).

[11] The Indiana legislature requires indigency hearings as to the imposition of fines and costs. *See* I.C. § 33-37-2-3(a) (providing "when the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent"); and I.C. § 35-38-1-18 (providing the same for court-imposed fines). With respect to probation fees, we have held that a trial court acts "within its authority when it chooses to wait and see if a defendant can pay probation fees before it finds the defendant indigent." *Johnson v. State*, 27 N.E.3d 793, 795 (Ind. Ct. App. 2015) (citing I.C. ch. 35-38-2). However, the trial court has a duty to conduct an indigency hearing, at the latest, upon the completion of the defendant's sentence. *Id.*

[12] Williams states that his case mimics the factual scenario in this court's decision of *Burnett v. State*, 74 N.E.3d 1221, 1227 (Ind. Ct. App. 2017). In *Burnett*, Burnett was charged with operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. *Id.* Following a bench trial, Burnett was found guilty as charged. *Id.* During the sentencing phase, the trial court asked one question to determine Burnett's financial situation. *Id.* After Burnett expressed that she made less than $20,000, the trial court sentenced her to 365 days with five days executed and the remainder suspended to probation. *Id.* The trial court ordered Burnett to pay several court costs, fees, and fines, which were payable alongside other probation fees. *Id.* The trial court's sentencing order and order of probation indicated that Burnett's probation would become non-reporting after she had finished paying all her probation fees. *Id.* On appeal, Burnett argued that the trial court failed to conduct an adequate

indigency hearing before it ordered her to pay certain probation fees. *Id*. In turn, the State contended that the trial court did conduct an indigency hearing based in part on its one question and on the fact that the record showed that Burnett was employed as a nurse and wore her nurse's uniform to trial. *Id*. We agreed with Burnett and noted:

> While in some cases such a brief inquiry into a defendant's financial situation may be sufficient—if, for example, the defendant reports a six-figure income or significant assets or has in some other way established herself as financially secure—in Burnett's case, it was not. . . . In this case, a sufficient indigency hearing would consist of the trial court asking Burnett questions in order to assess her actual ability to pay. Such questions might include asking about her exact yearly income, her assets or debts, or any financial expenses that could have an impact on her ability to pay fees, such as the cost of her rent, utilities, or transportation to and from work, medical expenses, or any dependents.

*Id*. at 1227. In the instant case, we observe the existence of conflicting evidence in the record concerning Williams' financial status. Although Williams retained private counsel and was employed at the time of sentencing, the trial court subsequently appointed appellate counsel. At his sentencing, Williams' trial counsel's argument for Williams' probation was to "terminate upon completion of the community service and the paying of all fines and fees," instead of requesting the trial court to find Williams indigent for the purposes of paying costs and fines. (Sentencing Tr. p. 105).

[13] We agree with Williams' that the facts of this case militate a similar finding as stipulated in *Burnett*. Like in *Burnett*, the trial court engaged in a superficial review of Williams' financial status. The trial court did not ask whether Williams had any debts, whether he paid any child support, or whether the trial court should know anything else about his financial circumstances that would impact his ability to pay mandated costs and fees. Instead, all the trial court asked was how many hours Williams worked, how much he earned, and how many children he had. Based on the limited exchange between the trial court and Williams regarding his financial position, we conclude that the trial court did not conduct a sufficient indigency hearing with regards to Williams' costs. *See* I.C. § 33-37-2-3(a). Therefore, because the court ordered Williams to pay costs and fees without conducting an adequate indigency hearing, the proper remedy is to remand to the trial court for such a hearing. *See Briscoe v. State*, 783 N.E.2d 790, 792 (Ind. Ct. App. 2003) (stating that "[w]here a trial court fails to conduct an indigency hearing when required, the proper remedy is to remand with instructions to hold such a hearing").

[14] With respect to Williams' probation fees, as we discussed above, the trial court acts "within its authority when it chooses to wait and see if a defendant can pay probation fees before it finds the defendant indigent." *Johnson*, 27 N.E.3d at 795 (citing I.C. ch. 35-38-2). Consequently, in this case, on the completion of Williams' sentence the trial court should conduct an indigency hearing to assess Williams' ability to pay probation fees.

# CONCLUSION

For the foregoing reasons, we remand with instructions to the trial court to determine whether Williams is indigent for the purposes of paying the costs and probation fees.

Remanded with instructions.

Robb, J. and Pyle, J. concur