## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 30 2019, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Rory S. Gallagher
Valerie K. Boots
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cameron Jermaine Hawkins, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff.* | July 30, 2019 Court of Appeals Case No. 18A-CR-3007 Appeal from the Marion County Superior Court The Honorable Amy M. Jones, Judge Trial Court Cause No. 49G08-1806-CM-20859 |

**Kirsch, Judge.**

[1] Cameron Jermaine Hawkins ("Hawkins") appeals his conviction for resisting law enforcement[1] as a Class A misdemeanor, raising the following restated issues for our review:

I. Whether there was sufficient evidence presented to sustain his conviction for resisting law enforcement; and

II. Whether the trial court abused its discretion in its determination of indigency.

[2] We affirm.

## Facts and Procedural History

[3] On June 20, 2018, Hawkins was ordered to be processed by the Indianapolis Metropolitan Police Department for a separate action. *Appellant's App. Vol II.* at 104. On June 26, a pretrial conference was held for that action, and the trial court ordered Hawkins to report for processing to perform a buccal swab or be sent to jail. *Tr.* at 15, 29. Deputy Ryan Wilson ("Deputy Wilson"), with the Marion County Sherriff's Office ("Sheriff's Office"), was on duty in the courtroom during the pretrial conference. *Id.* at 28. As Hawkins was leaving the courtroom, he tried to exit through an improper door. *Id.* at 29. Deputy Wilson lightly touched Hawkins's elbow to stop him from exiting through the

---

[1] *See* Ind. Code § 35-44.1-3-1(a)(1).

door and notified him of his mistake. *Id.* at 16. When Deputy Wilson notified Hawkins, Hawkins shouted, "don't fucking touch me." *Id.* at 17.

[4] Deputy Wilson then attempted to escort Hawkins downstairs. *Id.* at 29. Deputy Wilson asked Hawkins if he was going to comply with the judge's order, and Hawkins responded, "no. . . fuck that." *Id.* at 30. Deputy Wilson then attempted to handcuff Hawkins, but Hawkins pushed Deputy Wilson's hands away. *Id.* at 18. Deputy Wilson ordered Hawkins multiple times to stop resisting. *Id.* Deputy Rayshond Hatfield ("Deputy Hatfield"), also with the Sheriff's Office, saw the interaction and began assisting Deputy Wilson by trying to turn Hawkins around. *Id.* Hawkins then lunged towards Deputy Wilson. *Id.* Deputy Wilson and Deputy Hatfield tried to get Hawkins on the floor, but Hawkins stiffened his legs, and the officers were unable to arrest him. *Id.* Hawkins kept moving his hands and Deputy Wilson could not grab them. *Id.* at 19. A third officer, Sheriff's Office Deputy Stephanie Gravos ("Deputy Gravos"), arrived and assisted the other two officers. *Id.* at 20. Deputy Gravos ordered Hawkins to "put his hands behind his back" or she would tase him. *Id.* Hawkins refused to comply, so Deputy Gravos tased Hawkins. *Id.* After being tased, Hawkins submitted to being handcuffed and was arrested. *Id.*

[5] On June 27, 2018, the State charged Hawkins with Class A misdemeanor resisting law enforcement. *Appellant's Vol. II* at 6. A jury trial was held on November 19, 2018, and Hawkins was found guilty of resisting law enforcement. *Tr.* at 78. At the November 27, 2018 sentencing hearing, the trial court sentenced Hawkins to one year of probation. *Id.* at 1, 93. The trial

court then asked Hawkins about his employment history and his current employment. *Id.* at 89. Hawkins testified he works either twenty-four or forty hours a week. *Id.* He also testified that he has three children, two of whom attend college. *Id.* Hawkins stated that he does not have a vehicle and lives with his mother and his grandmother. *Id*. at 89-90. Lastly, Hawkins stated that he helps his grandmother pay her bills due to her illness. *Id.* at 89. The trial court considered this information and declared Hawkins indigent as to court costs. *Id.* at 94. The trial court then placed Hawkins on a sliding fee scale for probation costs. *Id.* Hawkins now appeals.

## Discussion and Decision

## I.    Sufficient Evidence

[6]     When we review the sufficiency of evidence, we do not determine the credibility of the witnesses or reweigh the evidence. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from the evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State*, 992 N.E. 871, 875 (Ind. Ct. App. 2013), *trans. denied.* We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Id.* As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[7] To convict Hawkins of resisting law enforcement as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that Hawkins knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer or a person assisting the officer while the officer was lawfully engaged in the execution of the officer's duties. Ind. Code § 35-44.1-3-1(a)(1). Hawkins argues that there was insufficient evidence that the officers were acting within the lawful execution of their duties because there was no justification for the arrest. Hawkins states that he was not ordered to submit to a buccal swab on June 26 and that the subsequent arrest for not complying with the order was unwarranted and unlawful.[2] Hawkins also contends that the officers used excessive force in apprehending him.

[8] Regardless of whether an arrest is lawful, a citizen cannot resist a peaceful arrest by a police officer. *Shoultz v. State*, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000), *trans. denied*. *See also Dora v. State*, 783 N.E.2d 322, 327 (Ind. Ct. App. 2003) (holding that determining the lawfulness of an arrest should be decided by the courts and not by emotional citizens). Hawkins is prevented by law from resisting an arrest that he thinks is unlawful. The jury reasonably found that Hawkins resisted the orders of the officers, and we will not reweigh the

---

[2] Appellant premises his argument on the lawfulness of the buccal swab. We do not address this issue because the lawfulness of the buccal swab is under a separate action and is not related to the lawfulness of the arrest currently at issue.

evidence as to the lawfulness of the arrest. Therefore, there was sufficient evidence to support his conviction.

[9] Hawkins further argues that the officers used excessive force because he was not arrested "on the suspicion of a crime." *Appellant's Br.* at 16. Force is excessive when it is "disproportionate to the situation." *Shoultz*, 735 N.E.2d at 823. Here, the officers did not use excessive force; they used only the force required to subdue Hawkins. When Deputy Wilson attempted to arrest Hawkins, Hawkins "pulled away" from Wilson. *Tr.* at 30. Deputy Wilson then tried to place Hawkins on the ground to handcuff him, but Hawkins resisted and ignored Deputy Wilson's orders. *Id.* at 18. Because Hawkins continued to fight back, three officers were required to subdue him. *Id.* at 20. Thus, the force used by the officers was not disproportionate to the force used by Hawkins to resist his arrest. We conclude that the officers did not use excessive force when they arrested Hawkins.

## II.    Indigency Determination

[10] Fees imposed by the trial court are "reviewed under an abuse of discretion standard." *Johnson v. State*, 27 N.E.3d 793, 794 (Ind. Ct. App. 2015). Fees and costs are included in sentencing orders. *Id.* "An abuse of discretion has occurred when the sentencing decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deduction to be drawn therefrom.'" *Id.* (quoting *McElroy v. State*, 856 N.E.2d 584, 588 (Ind. 2007)). "If the fees imposed by the trial court fall within

the parameters provided by the statute, we will not find an abuse of discretion." *Id.* (quoting *Berry v. State*, 950 N.E.2d 798, 799 (Ind. Ct. App. 2011)).

[11] Hawkins argues that the trial court improperly delegated the indigency determination to the probation department. We disagree. Under Indiana Code section 35-38-2-1(b), a trial court may impose fees when the defendant is convicted of a misdemeanor. A trial court is required to conduct an indigency hearing prior to imposing costs. Ind. Code § 33-37-2-3. An indigency hearing may be conducted at any point but should take place before the defendant completes his sentence. *Burnett v. State*, 74 N.E.3d 1221, 1227 (Ind. Ct. App. 2017). An indigency hearing is sufficient when the trial court asks questions to determine a defendant's "ability to pay." *Id.*

[12] Here, it was the trial court, not the probation department, that ascertained sufficient information to make the determination that Hawkins was indigent. The trial court asked Hawkins about his employment, his living situation, his transportation, and his dependent children. This information was sufficient to determine Hawkins's ability to pay court costs. Thus, an indigency hearing was held and was properly conducted. Placing Hawkins on the sliding fee scale for probation was not an abuse of discretion because the trial court found that Hawkins' job afforded him the ability to pay a portion of probation costs. In doing so, the trial court did not abuse its discretion.

[13] Affirmed.

Vaidik, C.J., and Altice, J., concur.