## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 28 2020, 8:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carlos Enrique Roberson, *Appellant-Defendant,* | January 28, 2020 |
| v. | Court of Appeals Case No. 19A-CR-1691 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Lisa F. Borges, Judge |
| | Trial Court Cause No. 49G04-1810-F4-35600 |

**Najam, Judge.**

## Statement of the Case

Carlos Enrique Roberson appeals his adjudication as a habitual offender following a jury trial.[1] Roberson raises the following two issues for our review:

> 1. Whether the trial court abused its discretion when it declined to instruct the jury on one of Roberson's proffered jury instructions.
>
> 2. Whether the trial court abused its discretion when it assessed certain costs and fees against Roberson.

We affirm.

## Facts and Procedural History

On October 12, 2018, Lawrence Police Department officers initiated a traffic stop of a vehicle being driven by Roberson. That traffic stop resulted in a search of the vehicle, and in that search officers discovered a firearm within reach of the driver's seat. Officers then determined that Roberson did not have a license to carry the firearm and, indeed, he had a prior criminal conviction that made his possession of the firearm unlawful.

The State charged Roberson in relevant part with unlawful possession of a firearm, as a Level 4 felony, and for being a habitual offender. The court held a bifurcated jury trial at which the parties first argued the Level 4 felony. That

---

[1] Roberson does not appeal his conviction for unlawful possession of a firearm by a serious violent felon, as a Level 4 felony.

phase of Roberson's trial began at 1:35 p.m. on June 13, 2019. At the commencement of that phase, the court read and distributed its preliminary instructions to the jury. The preliminary instructions included informing the jury that it "has the right to determine both the law and the facts. The Court's instructions are your best source of determining the law." Tr. Vol. 2 at 90, 92. Such instructions are referred to as "Section 19" instructions after Article 1, Section 19 of the Indiana Constitution, which provides that, "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts."

[5]     At the end of the first phase of the trial approximately three and one-half hours later, the court read and distributed its final instructions to the jury. Those final instructions repeated the earlier Section 19 instruction that "the jury has the right to determine both the law and the facts. The Court's instructions are your best source in determining the law." *Id.* at 195-96. The final instructions also informed the jury to consider the preliminary instructions in arriving at a verdict. The court further permitted the jury to take the instructions into the jury room during deliberations.

[6]     At 6:55 p.m., the jury returned a guilty verdict against Roberson on the Level 4 felony charge. The court and the parties then immediately proceeded to the second phase of the trial on the habitual offender allegation. That phase began with the court reading and distributing to the jury new preliminary instructions. Those instructions included the statement that the instructions from the first phase of the trial "will not be reread to you" but that the jury "will keep them in mind as they are applicable to th[e habitual offender] count also." *Id.* at 209.

Roberson informed the trial court that he had no objection to that preliminary instruction and that he had no additional preliminary instructions at that time.

[7] Less than one-half hour later, the parties rested on the habitual offender phase of the trial. The court then reviewed proposed final instructions for the habitual offender phase with the parties after Roberson had waived having that phase's preliminary instructions reread to the jury. The second phase's final instructions included the statement that "the Court has heretofore informed you as to your deliberations" and that such "instructions will not be re-read to you and you will keep them in mind during your deliberations." *Id.* at 225.

[8] Roberson informed the court that he had no objections to the court's proposed final instructions for the habitual offender phase. However, he proffered the following additional instruction: "[B]ecause you are the judges of the law and the facts, even though you find that the fact of the prerequisite felony conviction is uncontroverted, you have the unquestioned right to find the Defendant is not a habitual offender." *Id.* at 221.

[9] The State objected to Roberson's proffered instruction, which objection the trial court sustained. In refusing Roberson's instruction, the court stated that it "is certainly not obliged to issue an invitation to the jury making a habitual offender determination [to] disregard prior convictions in addition to informing the jury of its ability to determine the law and the facts." *Id.* The court further stated:

> In both the preliminary instructions and the final instructions [from the initial phase], the Court has stated, under the Constitution of Indiana, the jury has the right to determine both the law and the facts. The Court's instructions are your best source in determining the law. The Court has also advised the jury, in [the] second phase[,] that they are to consider the [initial] preliminary and final instructions when considering this phase.
>
> So the Court denies the Defendant's request . . . and I think it is covered by . . . both preliminary and final [instructions from the first phase].

*Id.* at 221-22.

[10] The parties then presented their closing arguments on the habitual offender allegation. Roberson's argument to the jury was that, notwithstanding the evidence, the jurors "absolutely have the right today, if you wish to do so, to find him not guilty as a habitual offender. That is within your right and in your power." *Id.* at 224.

[11] The court then read the final instructions for the habitual offender phase, and the jury retired for deliberations. Shortly thereafter, the jury submitted a question to the court. That question read: "[I]f we agree that [Roberson] was convicted of the first two felonies, do we have the option to determine that he is not a habitual offender?" *Id.* at 227. After discussing the question with the parties, the court responded: "[T]he answer is yes. Yes, they can ignore the law. So, I'm going to say yes." *Id.* at 228. Nonetheless, around 9:15 p.m., the jury returned a guilty verdict against Roberson on the habitual offender allegation.

[12] At Roberson's ensuing sentencing hearing, the court found that Roberson was able to pay court costs of $185, a safe school fee of $200, and a public defender supplemental fund fee of $100. The basis for the court's assessment of those costs against Roberson was his "history of employment and [that Roberson is] physically and mentally able to work." *Id.* at 248. This appeal ensued.

## Discussion and Decision

### *Issue One: Roberson's Proffered Jury Instruction*

[13] On appeal, Roberson first asserts that the trial court abused its discretion when it declined to instruct the jury on his proffered jury instruction. "Instructing the jury is a matter within the discretion of the trial court, and we'll reverse only if there's an abuse of that discretion." *Cardosi v. State*, 128 N.E.3d 1277, 1284 (Ind. 2019). "[W]e look to whether evidence presented at trial supports the instruction and to whether its substance is covered by other instructions." *Batchelor v. State*, 119 N.E.3d 550, 554 (Ind. 2019).

[14] Roberson's only argument on appeal is that, as a matter of law, "when a defendant requests the trial court to instruct the jury on its role as finders of law and fact during the habitual offender phase of a trial, it is reversible error for the trial court to refuse the request." *Warren v. State*, 725 N.E.2d 828, 837 (Ind. 2000). Setting aside the fact that Roberson presents no argument at all, let alone argument supported by cogent reasoning, that his proffered instruction merely sought "to instruct the jury on its role as finders of law and fact," nonetheless we hold that *Warren* does not apply here. As a subsequent opinion

from our Supreme Court—which is disregarded by Roberson in his arguments on appeal—made clear:

> In *Warren* we required that the jurors be given the Section 19 instruction in the habitual offender phase of a trial even though it had also been read to them as a [preliminary[2]] instruction in the guilt phase. . . . The elapsed time between the guilt and habitual offender phases of the trial in *Warren* was two days, and we held it to be reversible error for the trial court to refuse the request.

> The present case, however, presents significant differences. On the first day of the two-day trial, after lunch break, the court read to the jury the preliminary instructions, one of the first of which was the defendant's tendered Section 19 instruction. The evidence concluded about noon the following day, and court reconvened at 2:30 p.m. for final arguments and instructions. The defendant specifically requested that the Section 19 instruction be included in the final instructions, and the trial court ruled that it would re-read the preliminary instructions without exception and would also give twenty-one other instructions on its own motion. The transcript, however, discloses that the Section 19 instruction was not re-read along with the remainder of the preliminary instructions. On the other hand, the Section 19 instruction was provided in writing to the jurors for use during their deliberations. The preliminary instructions were included in the notebooks provided to each juror by the trial court for use during the trial and deliberations.

> Although the trial court incorrectly failed to read the Section 19 instruction among the other final instructions, it is very

---

[2] Our Supreme Court's opinion quoted here erroneously says that *Warren* referred to a final instruction. This is not correct. *Warren*, 725 N.E.2d at 835. We have accordingly corrected the text to accurately describe *Warren*.

significant that this instruction was given to the jurors both orally and in writing among the preliminary instructions only a day before, and also provided to them in written form for use during deliberations. Under these circumstances, we find that the trial court's omission of the Section 19 instruction when it re-read its preliminary instructions among the final instructions does not warrant reversal.

*Bridges v. State*, 835 N.E.2d 482, 483-84 (Ind. 2005) (footnotes and citations omitted).

A 2006 opinion from our Court—also disregarded by Roberson in his argument—is on point with this appeal. In *Shouse v. State*, we declined to follow *Warren* and instead followed *Bridges*, explaining as follows:

> This case is distinguishable from *Warren*. Here, the trial court gave the Section 19 instruction during final instructions, not preliminary instructions, and the habitual offender phase was held immediately after the jury announced its verdicts. In *Warren*, the instruction was given during preliminary instructions, and two days elapsed between the guilt and habitual offender phases of trial. In addition, during closing argument for the habitual offender phase of trial in this case, counsel for [defendant] reminded the jury:
>
>> You can consider your final instructions from the trial when you go back to the jury room. One of those instructions is number 21 and I would like you to consider that instruction. Since this is a criminal case the Constitution of the State of Indiana makes you the judges of both the law and the facts. Though this means you are to determine the law for yourself it does not mean you have the right to make, repeal, disregard or ignore the law as it exists.

*　　*　　*

> We agree with the State that *Bridges* controls the outcome of this case. Although the trial court erred by failing to give the Section 19 instruction during the habitual offender phase of trial, the error does not warrant reversal. Similar to *Bridges*, we find it very significant that the court read the Section 19 instruction during final instructions of the guilt phase of trial. This occurred on the *very same day* as the habitual offender phase of trial. Also, the jury had a copy of this instruction for use during deliberations, and counsel for [defendant] read this instruction to the jury during closing argument. Under these circumstances, the error is not reversible.

849 N.E.2d 650, 658-59 (Ind. Ct. App. 2006) (emphasis in original), *trans. denied*.

[16] Here, the trial court read and distributed the first phase's preliminary and final instructions to the jury, which instructions contained the Section 19 instructions. The second phase of Roberson's trial was held immediately after the jury returned its verdict on the first phase. The court also read and distributed the second phase's preliminary and final instructions to the jury— while those instructions did not in themselves repeat the Section 19 instructions, they did explicitly incorporate the instructions from the first phase, which instructions the jurors had in their possession.

[17] This all occurred not just on the "very same day" but in a total timespan of less than eight hours. The jurors had copies of all the instructions during their deliberations on the habitual offender allegation, and Roberson's closing

argument on the second phase emphasized the jury's authority under Article 1, Section 19.  Moreover, the jury explicitly asked the court during the second phase if it could decline to find Roberson guilty of being a habitual offender despite the evidence, which the court answered in the affirmative.  Accordingly, assuming only for the sake of argument that the court erred in not accepting Roberson's proffered instruction, under these circumstances any such error is not reversible error.  We affirm Roberson's adjudication as a habitual offender.

### *Issue Two:  Imposition of Fees*

[18] Roberson also asserts on appeal that the trial court abused its discretion when it ordered him to pay $485 in costs and fees at the close of the sentencing hearing. Sentencing decisions include decisions to impose costs and fees, and a trial court's sentencing decision is reviewed for abuse of discretion. *De La Cruz v. State*, 80 N.E.3d 210, 213 (Ind. Ct. App. 2017) (quotation marks omitted).  An abuse of discretion has occurred when the sentencing decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.  *Id.* (quotation marks omitted).  The trial court must impose fees within statutory parameters.  *Id.*

[19] According to Roberson, the trial court abused its discretion in ordering him to pay the costs and fees because the trial court "did not make a determination regarding whether [he] was indigent."  Appellant's Br. at 9.  Indiana Code Section 33-37-2-3(a) (2019) requires a trial court to hold an indigency hearing if the court imposes costs on a defendant.  A trial court has a duty to conduct an

indigency hearing "at some point in time." *Burnett v. State*, 74 N.E.3d 1221, 1227 (Ind. Ct. App. 2017).

[20] One of the fees the court assessed against Roberson was a public defender supplemental fund fee of $100. Although the court stated at sentencing that Roberson was to pay that fee, in fact the court had assessed that fee against him, pursuant to Indiana Code Section 35-33-7-6, at Roberson's initial hearing in October of 2018. At that hearing, Roberson requested the appointment of a public defender on his behalf. In his written request, he informed the court that he was employed; that he worked more than forty hours per week; that he made $300 per week in take-home pay; and that he had rent and bills to pay.

[21] According to the court's order following that hearing, the court found Roberson "to be partially indigent with present ability to pay a preliminary fee to the Public Defender Supplemental Fund" of $100. Appellant's App. Vol. II at 37. Then, following sentencing about eight months later, the court imposed an additional $385 in costs and fees against Roberson along with the earlier $100 fee. In imposing those costs and fees at sentencing, the court relied on Roberson's "history of employment" that he was "physically and mentally able to work." Tr. Vol. 2 at 248.

[22] In his challenge to the court's imposition of the $485 in costs and fees, Roberson did not include in the record on appeal a copy of the transcript from the initial hearing. It was Roberson's responsibility to provide that transcript to the Court, and we cannot know whether the omission of that transcript was

inadvertent or deliberate. It is apparent, however, that at sentencing the trial court relied at least in part on its prior finding that Roberson was "partially indigent" with some present ability to pay, as the court reiterated its imposition of the $100 fee at that time. *Id.* Further, the court's assessment at sentencing of Roberson's history of employment and ability to work is supported by Roberson's own written representations to the court at the initial hearing. Accordingly, we conclude that Roberson has not met his burden on appeal to demonstrate reversible error on this issue, and we affirm the court's imposition of costs and fees against Roberson.

## Conclusion

[23] In sum, we affirm Roberson's adjudication as a habitual offender and the court's imposition of costs and fees against him.

[24] Affirmed.

Vaidik, J., and Tavitas, J., concur.